IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02150-NRN

CYNTHIA VERONICA MARTINEZ,

Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. REID NEUREITER**
**United States Magistrate Judge**

An Administrative Law Judge ("ALJ") determined that Plaintiff Cynthia Martinez is not disabled for purposes of the Social Security Act (the "Act"). (AR[1] 26.) Ms. Martinez has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #14.)

## Standard of Review

In Social Security appeals, the Court reviews the ALJ decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009)

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##11 & 11-1 through 11-15).

1

(internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## **Background**

At the second step of the Commissioner's five-step sequential evaluation process for making determinations,[2] the ALJ found that Ms. Martinez "had the following severe impairments: lumbar and cervical degenerative disc disease; right shoulder AC separation; diabetes mellitus; bipolar disorder; and anxiety disorder." (AR 17.) The ALJ then determined, at step three, that through the current date last insured, Ms. Martinez "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the regulations. (AR 18.) Because she concluded that Ms. Martinez did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that through the date last insured, Ms. Martinez had the following residual functional capacity ("RFC"):

> . . . [Ms. Martinez] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following abilities and limitations: [Ms. Martinez] could have occasionally climbed ramps and

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of an impairment as listed in the regulations; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

stairs but was unable to climb ladders, ropes, or scaffolds; [Ms. Martinez] was occasionally able to balance, stop, kneel, crouch, and crawl; [Ms. Martinez] needed to avoid hazards such as unprotected heights and dangerous moving machinery; [Ms. Martinez] was unable to reach over head with her right (dominant) upper extremity; [Ms. Martinez] could have no more than occasionally reached overhead with the left upper extremity; [Ms. Martinez] could have frequently reached in all other directions bilaterally, and was limited to frequent handling and fingering bilaterally; [Ms. Martinez] was limited to low stress work, which is defined as occasional decision making and occasional adapting to workplace change; [Ms. Martinez] was limited to occasional public contact; and [Ms. Martinez] was unable to perform work that would require travel to unfamiliar places.

(AR 20-21.) At step five, the ALJ determined that "[t]hrough the current date last insured, considering [Ms. Martinez'] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Ms. Martinez] could have performed . . . ." (AR 25.)

As a result, the ALJ concluded Ms. Martinez was not disabled and was not entitled to benefits. (AR 26-27.)

Ms. Martinez asserts two reversible errors: first, that the ALJ erred when she denied Ms. Martinez' motion to reopen her prior claim; and second, that the ALJ erred by concluding there were jobs in the national economy that Ms. Martinez could perform, and therefore she is not disabled within the meaning of the Act. (Dkt. #15 at 4-8.)[3]

I conclude the ALJ did not err in denying Ms. Martinez' motion to reopen her prior claim, but that she did err by concluding the Commissioner had met her burden of proving available jobs in the national economy that Plaintiff could perform. Although the ALJ, in her RFC findings and analysis, referenced two limitations that the Vocational

---

[3] Although in her Opening Brief, Ms. Martinez "asserts that the administrative decision fails due to improper application of the legal standards at step three, [and a] failure to demonstrate the conclusion made at step three was supported by substantial evidence" (Dkt. #15 at 3), nowhere in her brief does she address or elaborate on this assertion, and thus I do not address it in this Order.

Expert testified would make Ms. Martinez unable to perform the three jobs identified by the Vocational Expert, the ALJ failed to make any specific factual findings in relation to these two limitations, necessitating the reversal and remand of the ALJ's decision for further development of the record with respect to these two limitations.

## Analysis

1. **Motion to Reopen**

Ms. Martinez first argues the ALJ erred when she denied counsel's request to reopen Ms. Martinez' prior claim for Social Security disability insurance benefits ("DIB"). Ms. Martinez's prior application for DIB was dated October 29, 2013. (AR 37.) As Ms. Martinez admits, she did not appeal that decision. (Dkt. #15 at 4; Dkt. #26 at 1.) Ms. Martinez filed the claim at dispute in this case on March 17, 2014 (AR 164-176), and her hearing before the ALJ regarding the application in dispute in this case was held on April 4, 2016. (AR 15, 32.)

Pursuant to 20 CFR § 416.1488, a determination may be reopened within 12 months of the date of the notice of the initial determination, within two years of the date of the notice for good cause, as defined in 20 CFR 416.1489, or at any time if it was obtained by fraud or similar fault. Judicial review of final decisions on claims arising under the Act, however, is limited by Sections 205(g) and (h) of the Act. 42 U.S.C. §§ 405(g) & (h). Section 205(h) precludes judicial review of the "findings of fact or decision of the Commissioner of Social Security . . . except as herein provided." 42 U.S.C. § 405(h). Section 205(g) provides for federal jurisdiction over "any final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party, irrespective of the amount in controversy." 42 U.S.C. § 405(g).

4

"It is well settled that federal courts lack jurisdiction under § 205 to review the Commissioner's discretionary decision to decline to reopen a prior application or to deny a subsequent application on res judicata grounds." *Tobak v. Apfel*, 195 F.3d 183, 187 (3rd Cir. 1999) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977), and *Stauffer v. Califano*, 693 F.2d 306, 307 (3d Cir. 1982)). S*ee also Keller v. Comm'r, Social Sec. Admin.*, --- F.App'x ---, 2018 WL 4360886 at *2 (10th Cir. Sept. 13, 2018). As the Supreme Court explained in *Sanders*, because an administrative decision declining to reopen a prior claim or denying a subsequent claim on res judicata grounds does not require a hearing, it is not a "final decision . . . made after a hearing" as required for jurisdiction under § 205(g) of the Act. *See Sanders*, 430 U.S. at 107-08.

Although a federal court has the ability to determine its own jurisdiction by examining whether res judicata has been properly applied, *Tobak*, 195 F.3d at 187 (citing *McGowen v. Harris*, 666 F.2d 60, 66 (4th Cir. 1981)), the decision not to reopen a prior claim is a discretionary decision afforded to the Commissioner and not subject to judicial review. *Sanders*, 430 U.S. at 108. There exist only two exceptions to this limit on judicial review: (1) where a de facto reopening has occurred, *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), and (2) where a claimant challenges the Commissioner's decision on constitutional grounds. *Sanders*, 430 U.S. at 108; *Campos v. Astrue*, 373 F. App'x 880, 882 (10th Cir. 2010); *Smith v. Berryhill*, No. 17-cv-01233-LTB, 2018 WL 3093329 at *9 (D. Colo. June 22, 2018). Ms. Martinez does not argue that either of these grounds exist. Instead, Ms. Martinez argues the ALJ reached an incorrect determination when she denied the request to reopen the prior application. (Dkt. #15 at 4-7.) Specifically,

Ms. Martinez argues the ALJ incorrectly applied res judicata. (*Id.* at 5.) Ms. Martinez also argues "there was additional material evidence present in the administrative record." (*Id.* at 6.) This argument goes to the elements to be considered by the ALJ when deciding whether to reopen a claim. The Court does not have authority to review this discretionary decision.

To the extent Plaintiff challenges the ALJ's denial of her request to reopen her prior application because the ALJ cited to 20 C.F.R. § 404.957 when stating she was applying res judicata to the previously adjudicated time period, the Court finds this incorrect citation to the statute to be a harmless technical error. *See Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("[T]he form of words should not obscure the substance of what the ALJ actually did."). *See also Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993) ("[T]he ALJ's failure to refer expressly to this particular detail in his questioning of the expert, if error, was minor enough not to undermine confidence in the determination of this case." (citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)); *accord Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing harmless technical errors in Social Security appeals). It is clear from the record that Ms. Martinez' attorney asked the ALJ to reopen the case and the ALJ denied that request. (AR 37-38.) Specifically, the ALJ stated: "It was an appeal and my hands are tied on that." (AR 37.) The ALJ's citation to the wrong statute does not change the substance of what happened, nor does it change this Court's authority. Ms. Martinez does not argue that there was a de facto reopening, nor does she challenge the ALJ's decision on constitutional grounds.

As a result, this Court does not have jurisdiction to review the ALJ's decision to deny Ms. Martinez's request to reopen her prior application. *Sanders*, 430 U.S. at 108; *Campos*, 373 F. App'x at 882.

**2. Finding Available Jobs Based on the RFC**

Ms. Martinez also argues the ALJ erred at step five of the RFC evaluation process when she found there were jobs available to Ms. Martinez in the national economy. (AR 25-26.) As noted above (at n. 2), the burden shifts to the Commissioner at step five. Thus, the Commissioner here was required to prove that Ms. Martinez could perform, with her RFC, other work in the national economy. *Lax*, 489 F.3d at 1084. *See generally* 30 Fed. Proc., L. Ed. § 71:209 (2018) ("The burden of proving that there is other work which the claimant can perform includes the burden of proving the claimant's current physical capacity for work, or his or her [RFC].").

According to Ms. Martinez, "[b]ased on the findings and limitations made in the [ALJ]'s RFC analysis, the [Vocational Expert]'s proposed jobs are not appropriate for Ms. Martinez' limitations and are not based on substantial evidence." (Dkt. #15 at 7.) Ms. Martinez specifically asserts that, after the Vocational Expert testified based on the *initial* hypothetical posed to her by the ALJ, and opined "that Ms. Martinez could be employed within the national economy at three separate positions" (mail clerk, garment sorter, and production assembler), she subsequently testified that someone with Ms. Martinez' RFC could *not* be employed "in these positions with restrictions on her neck movement, ability to finger and sort and time task off." (*Id.* at 8.)

Further, because "[a]n administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable

answers," *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987), there also is a question—which I find is unresolved—as to whether certain hypotheticals that the ALJ posed to the Vocational Expert in this case were or were not based on substantial evidence, because the ALJ failed to address this in her decision. Thus here, as in *Campbell*, "the [V]ocational [E]xpert's responses to the hypothetical questions asked by the ALJ cast serious doubt on [Ms. Martinez'] ability to do the work described by" the Vocational Expert. *Id.* at 1523. *See generally* Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court § 3:101 (2018) ("SSDL § 3:101") ("Substantial evidence does not support a finding of disability where the [Vocational Expert's] testimony either is contradictory or responds to an inaccurate hypothetical.").

Ms. Martinez also argues that "the proposed jobs given by the [Vocational Expert] do not properly accommodate each of the significant limitations the Judge factored into the RFC," and that "[w]hen jobs proposed by the [Vocational Expert] do not fully account for the limitations in the RFC, they are not based on substantial evidence and the commissioner has not met the obligations at step five in showing that a claimant is not disabled." (Dkt. #15 at 8.) *See also* SSDL § 3:101 ("The vocational expert's answers to questions which do not take into account all of a claimant's limitations do not constitute substantial evidence to support the decision of the agency.").

The Commissioner, on the other hand, argues that the additional limitations posed by the ALJ in the follow up questions to the Vocational Expert relating to restrictions on Ms. Martinez' "neck movement, ability to finger and sort[,] and time off task" (Dkt. #15 at 8), were "found by the ALJ to be unsupported by the record," and

8

therefore "the ALJ was not required to pose questions or accept responses to [] questions that included limitations [such as these that] the ALJ did not ultimately assess in her RFC finding." (Dkt. #22 at 10-11.) *See generally* VE Questions § 3:101 ("[T]he ALJ need only include in his questioning those impairments which the ALJ had found to be credible," i.e., "[t]he ALJ may exclude from the hypothetical any alleged impairments that [she] has properly rejected as untrue or unsubstantiated.").

The key issue, therefore, is whether, as Ms. Martinez argues, the ALJ included in her RFC finding any of the limitations addressed by the Vocational Expert in the modified hypotheticals posed by the ALJ (i.e., those pertaining to occasional handle, finger, and reach; moving or rotating of the neck; and the ability to stay on task where the maximum amount of sitting time is one hour), or whether, as the Commissioner argues, the ALJ "found [these limitations] to be unsupported by the record." After briefly discussing the ALJ's original hypothetical, I will address each of the limitations set forth in the modified hypotheticals in turn.

The original hypothetical posed by the ALJ to the Vocational Expert concerned "light work only," and more specifically set forth Ms. Martinez' RFC as:

> Light work that could not climb any ropes, ladders or scaffolds. Could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Would have to avoid hazards like unprotected heights and dangerous moving machinery. Could not reach overhead on the right and occasionally overhead reach on the left. And she's - - the right is the dominant. On the right dominant, okay? The would be limited to low stress work, which is going to be defined as occasional decision making and occasional adapting to workplace change and would be limited to only occasional public contact and no work where she would have to travel to unfamiliar places.

(AR 61-62.) The Vocational Expert testified that based on these limitations, Ms. Martinez would not be able to do any of her past work, "specifically in relation with the

occasional public contact." (AR at 62.) She thereafter testified that other light work Ms. Martinez could do included work as a mail clerk, a garment sorter, and a projection assembler, and she eroded the numbers of available jobs for each of these specifically based on Ms. Martinez' overhead reach limitations. (AR 62-63.)

    a. Occasional handle, finger, and reach limitation

When asked by the ALJ whether there "[w]ould [] be any jobs at light [i.e., light work] with the restrictions including the occasional handle, finger and reach," the Vocational Expert responded in the negative. (AR 64.) Later, in responding to the ALJ's specific questions about the "reach, handle, finger and feel" requirements of each possible job, the Vocational Expert clarified that feeling was not present in any of these jobs, but that "reach, handle, [and] finger are all frequent," and "if it were anything less than frequent, that would eliminate these jobs." (AR 63-64.) In the ALJ's written decision, in addition to including the claimant's inability to reach overhead with her right upper extremity, and her ability to occasionally reach overhead with her left upper extremity (which the Vocational Expert factored in to her available jobs analysis by eroding the numbers), the RFC finding included limitations of "frequently reach[ing] in all other directions bilaterally," and "frequent handling and fingering bilaterally." (AR at 21.) Because these "additional limitations" are consistent with the jobs proposed by the Vocational Expert, and were in fact addressed by her, I conclude the ALJ's finding in this regard was based on substantial evidence.

    b. Rotation of the neck

At the hearing, Ms. Martinez testified she cannot drive "[b]ecause the repetition of the movement of the head . . . causes extreme pain in [her] neck and gives [her]

10

headaches." (AR at 51.) When specifically asked by the ALJ, she confirmed she has "problems moving [her] head around," and the "[r]epetitive movement . . . hurts my neck." (AR at 52.)

When questioning the Vocational Expert, the ALJ asked "about rotation of the neck" and, more specifically, "if a person is going to be able to only occasionally rotate their neck side to side, how would that impact these jobs?" (AR at 64.) The Vocational Expert replied, "it would eliminate the jobs as an individual is going to need to rotate, as well as, use flection and extension to complete the essential job duties." (*Id.*) The Vocational Expert further clarified that with a person who could frequently rotate their neck, "there would be some exceptions," but that "an individual is going to have to be able to do neck rotation pretty much at will to be able to complete the job duties." (*Id.*)

In her decision, the ALJ noted that Ms. Martinez had testified that "she has pain in her neck and difficulty moving it around." (AR at 22.) According to the ALJ, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) But the ALJ does not elaborate on *which* of Ms. Martinez' statements "are not entirely consistent with the medical [and other] evidence." (*Id.*) Nowhere in her decision, for example, does she specifically address whether Ms. Martinez' testimony concerning her difficulty in rotating or moving her neck around was inconsistent with the medical evidence, prompting her to discount or reject it. Nor did the ALJ address whether Ms. Martinez' medically determinable impairments could reasonably be

11

expected to cause this symptom. Therefore, contrary to the Commissioner's assertion, the ALJ did *not* find the limitation on Ms. Martinez' neck movement "to be unsupported by the record" (Dkt. #22 at 10), nor did she find Ms. Martinez' testimony concerning this limitation was not credible.

As a result, I conclude the record is incomplete with respect to this particular limitation which, if applicable, would, as the Vocational Expert testified, be inconsistent with a finding that jobs existed in the national economy that Ms. Martinez could perform. Remand is therefore appropriate on this issue, and the ALJ is directed to make specific findings regarding whether Ms. Martinez has any limitations on her ability to move or rotate her head or neck from side to side and, if so, whether this determination alters her conclusion that there are jobs available to Ms. Martinez.

    c.  <u>One hour maximum sit time</u>

Ms. Martinez also testified during the hearing that she has difficulty sitting for long periods of time, and that she can only sit for 30 minutes to an hour, after which her doctors have advised her to "move around," which she does by "get[ting] up and walk[ing] around the block or [] around the house." (AR at 55-56.) Likely based on this testimony, the ALJ asked the Vocational Expert whether "for these jobs, if . . . the maximum amount of time that [a claimant] can sit uninterrupted is one hour, before needing to get up, [and] move around for five minutes," would that "impact these jobs?" (AR at 65.) The Vocational Expert replied that "if an individual needs to move around and they're off-task during that five minute period, it will be greater than what employer's [sic] will tolerate throughout the day"—i.e., it would eliminate these jobs—but "[i]f they're able to stay on-task and stand up, it would be more feasible." (*Id.*)

12

In her decision, the ALJ noted Ms. Martinez testified "that she can sit for about 30 to 60 minutes before she starts to feel pain in her lower back." (AR at 22.) The ALJ also appeared to make the specific finding that Ms. Martinez "can sit for 30 to 60 minutes." (*Id.*) But nowhere in her decision does the ALJ address whether Ms. Martinez, after sitting for an hour, can then stand up for five minutes while staying on task. Nor does the ALJ address whether, consistent with Ms. Martinez' testimony at the hearing, in addition to standing up every hour, Ms. Martinez also needs to move around—which presumably would mean she would be off-task. Such a finding would be important since if this were the case (i.e., if Ms. Martinez has to both stand *and* move around, taking her off-task), she would not be eligible (according to the Vocational Expert) for the three jobs described by the Vocations Expert.

Accordingly, I conclude the record below is incomplete with respect to this particular limitation that is part of the ALJ's RFC findings, and therefore a remand is necessary for the ALJ to make specific findings consistent with the discussion above.

## **Conclusion**

For the reasons set forth above, the Administrative Law Judge's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order, and such other proceedings as the ALJ may deem appropriate.

Dated this 20th day of December, 2018.

BY THE COURT

_____
N. Reid Neureiter
United State Magistrate Judge